**IMG-025** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3253
_____

LUIZ C. RIBEIRO; TALLES G. RIBEIRO;
NATASHA RIBEIRO; LUIS C. RIBEIRO, JR.,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A096-644-255, A096-644-256, A096-644-257 and A096-656-701)
Immigration Judge:  Honorable Margaret Reichenberg

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 2, 2012
Before:  SMITH, HARDIMAN AND STAPLETON, Circuit Judges

(Opinion filed: February 3, 2012)
_____

OPINION
_____

PER CURIAM

Petitioners seek review of the final order of removal of the Board of Immigration

Appeals' ("BIA" or "Board").  For the following reasons, we will deny the petition for

review.

I.

Petitioners Luis Ribeiro and his children, Talles Ribeiro, Natasha Ribeiro, and Luis Ribeiro, Jr., are natives and citizens of Brazil. They entered the United States in 2000 as visitors and overstayed their visas. In 2007, the Government instituted removal proceedings pursuant to INA § 237(a)(1)B). After conceding removability, Luis Ribeiro applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on behalf of himself and his children.[1] Ribeiro claimed that he experienced past persecution and fears future persecution by drug traffickers on account of his political opinion. Specifically, he claimed that he was targeted for his "civil obedience" because he opposes illegal drug trafficking in Brazil.

Ribeiro, a dentist, testified that in 1996 he asked a co-worker to assist him in finding a used diesel engine for his truck. His co-worker introduced him to two men who offered to sell Ribeiro an engine from a nearly-new truck at a reduced price. Fearing that the truck was stolen, Ribeiro refused to purchase the engine. When the men tried to force him to buy the engine, Ribiero claimed that he left the parking lot to alert security, at which point the men fled. Several days later, Ribeiro alleged that unidentified individuals shot at him while he was driving. He believes that they are affiliated with the men who tried to sell him the used diesel engine.

Ribeiro also testified that he moved to another town, where he lived undisturbed from the beginning of 1997 until the end of 1999. At the end of 1999 he began receiving

---

[1] For simplicity, we will refer only to Luis Ribeiro ("Ribeiro") as he is the lead petitioner and Ribeiro's children have not raised any claims in their opening brief independent of Ribeiro's claims.

anonymous telephone calls from individuals who said that they had found him. In December 1999, Ribeiro's former co-worker and another person came to Ribeiro's new place of business and told him that he still owed them money from the previous failed transaction. In lieu of payment, the men proposed that Ribeiro drive a car for them to Bolivia, leave it for a few days, and then drive it back to Brazil. Ribeiro agreed to the proposal, but did not intend to carry out the plan, fearing that it was essentially a drug-running operation. Instead, Ribeiro procured a visitor visa and came to the United States. His wife and three children came to the United States shortly thereafter. Ribeiro testified that he fears that if he returns to Brazil, the same individuals will find him and harm him and his children.

The IJ concluded that Ribeiro's asylum claim was time-barred and denied his withholding of removal claim based upon her finding that Ribeiro had not been targeted in Brazil on account of his political opinion, but rather because drug traffickers wished to obtain money from him. The IJ further determined that neither Ribeiro nor his children had shown that it was more likely than not that they would experience future persecution on account of Ribeiro's political opinion or another protected ground. Lastly, the IJ concluded that Ribeiro was unable to demonstrate that he or his children would likely be tortured by, or with the acquiescence of, the Brazilian government. On appeal, the BIA agreed with the IJ's conclusions and dismissed the appeal. Ribeiro timely petitioned for review of the Board's decision.

## II.

This Court has authority to review final orders of removal. See 8 U.S.C. §

3

1252(a). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review an agency's factual determinations for substantial evidence, and will uphold such determinations "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (internal citations omitted).

An alien seeking withholding of removal must demonstrate a clear probability that if he returns to the country to which his removal is proposed, i.e., the country of removal, he will be persecuted, meaning that it is more likely than not that his life or freedom would be threatened and that the threat would be attributable to his race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A); Tarrawally v. Ashcroft, 338 F.3d 180, 186 (3d Cir. 2003). If an alien can establish that he suffered past persecution in the country of removal, there is a rebuttable presumption that he will be subjected to future persecution if removed to that country. See 8 C.F.R. § 1208.16(b). But even if an alien has not suffered past persecution in the country of removal, provided the alien can establish through other evidence that there is a likelihood that he will be subject to future persecution in the country of removal, he will be eligible for withholding of removal relief. Id.

To obtain relief under the CAT, an alien must establish that it is more likely than not that he will be tortured in the country of removal by or at the instigation of, or with the consent or acquiescence of, a public official. See 8 C.F.R. § 1208.16(c)(2); 8 C.F.R. § 1208.18(a)(1); Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 64-65 (3d Cir. 2007).

4

On appeal, Ribeiro argues that the agency: 1) improperly determined that he failed to qualify for withholding of removal based on his political opinion, namely his "civil obedience" against illegal drug trafficking; 2) improperly determined that he failed to satisfy the statutory criteria for protection under the CAT; and 3) violated his due process rights by failing to sufficiently consider the report submitted by his expert.[2]  (See Petitioner's Brief ("Pet. Br.") at 14, 19, 27.)

With regard to Ribeiro's first argument, after reviewing the administrative record, we conclude that the BIA did not err in upholding the IJ's denial of Ribeiro's request for withholding of removal.  There is no indication that the alleged criminals who targeted him did so because he opposes illegal drug trafficking in Brazil, a feature distinguishing this case from Espinosa-Cortez, in which we found the petitioner's "close, direct affiliation with, and support of, the Colombian government and military" to be persuasive circumstantial evidence supporting an inference of imputed political opinion.  Espinosa-Cortez v. Att'y Gen., 607 F.3d 101, 110-11 (3d Cir. 2010).  Rather, as the BIA discussed, the evidence overwhelmingly suggests that Ribeiro was repeatedly targeted because he refused to enter into financial dealings with alleged criminals.

We also conclude that substantial evidence supports the agency's decision to deny Ribeiro's application for CAT relief.  In his opening brief, Ribeiro does not point to any

---

[2] Ribeiro does not dispute the agency's conclusion that his asylum application was untimely filed and, in any event, this Court lacks jurisdiction to review that determination.  See 8 U.S.C. § 1158(a)(3); Tarrawally, 338 F.3d at 185.

5

record evidence that would compel the conclusion that it is more likely than not that the people who threatened him in the 1990s would torture him or his children upon their return to Brazil with the consent or acquiescence of public officials. See 8 C.F.R. § 1208.18(a)(1).

Finally, Ribeiro argues that the IJ violated his due process rights by failing to adequately consider the report of his expert, Professor Robert Gay, before rendering a decision. We note however, that the IJ stated in her decision that she carefully reviewed the evidence of record before issuing a decision. (See Administrative Record ("A.R.") at 69.) Indeed, she referenced the expert report specifically. (Id.) The BIA, in its opinion dismissing Ribeiro's administrative appeal, noted that Professor Gay's report "does not address the issue on which Ribeiro's claim turns, i.e. whether [his] life will be in danger on account of a protected ground under the Act." (Id. at 5.)

We have previously determined that the BIA need not "write an exegesis on every contention, but only . . . show that it has reviewed the record and grasped the [petitioner's] claims." Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (internal quotation marks omitted). Here, we are satisfied that the BIA fully grasped Ribeiro's claims and conclude that he has not met his burden of showing that the IJ or BIA failed to adequately consider Professor Gay's report. See Abdulai v. Ashcroft, 239 F.3d 542, 550 (3d Cir. 2001) (petitioner bears the burden of proving that the BIA failed to consider the record before it).

Accordingly, we will deny the petition for review.